UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEANETTE M. WALLIS,

    Plaintiff,

v.

BNSF RAILWAY COMPANY,

    Defendant.

C13-40 TSZ

ORDER

THIS MATTER comes before the Court on Plaintiff's motion for attorney fees and costs, docket no. 115. Having reviewed all papers filed in support of and in opposition thereto, the Court enters the following Order.

**Background**

On January 8, 2013, Plaintiff Jeanette Wallis filed this action alleging that her employer, Defendant BNSF Railway Company, violated the Federal Railroad Safety Act ("FRSA") by taking multiple unfavorable personnel actions against her due to Plaintiff's

ORDER - 1

reporting of a work related injury.[1]  Complaint, docket no. 1.  Defendant filed a motion for partial summary judgment, seeking the dismissal of claims based on six of the unfavorable personnel actions and seeking dismissal of Plaintiff's claim that Defendant interfered with Plaintiff's medical treatment.  Docket no. 35.  The Court granted in part and denied in part the motion, dismissing three of the six unfavorable personnel actions and dismissing the interference claim.  Docket no. 41.

The case was tried before a jury for eight days.  At the close of Plaintiff's case, the Court dismissed Plaintiff's claim that Defendant delayed Plaintiff's return to work.  Docket no. 100.  Of the multiple unfavorable personnel actions alleged in Plaintiff's complaint, the only two remaining issues at the close of trial related to her 30-day record suspension, received for committing a "Level S" or serious rule violation for violating a conduct rule and failing to be forthcoming about the incident, and the imposition of 40 "risk-identifier"/PPI points.  See Jury Instructions, docket no. 102, at 15.  The jury found that Defendant violated the FRSA, awarded Plaintiff $20,000 in damages, and found that Defendant's conduct was not malicious, oppressive, or in reckless disregard of Plaintiff's rights.  See Jury Verdict, docket no. 112.

---

[1] Plaintiff originally brought her complaint before the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA").  Plaintiff initially prevailed, with the Secretary's Preliminary Order awarding Plaintiff back wages, compensatory damages of $125,000, punitive damages of $150,000, and attorney's fees of $22,917.50.  Preliminary Order, Jungbauer Decl. Ex. K, docket no. 116-3, at 70.  BNSF appealed the preliminary findings to the Office of Administrative Law Judges, and Plaintiff timely removed the case to this Court.

ORDER - 2

Plaintiff filed a motion for attorney fees and costs, seeking $374,101.25 in fees and $141,196.29 in costs, for a total of $515,297.54.[2]  Docket no. 115.

**Attorney Fee Request**

A.  Standard

An employee who prevails on an FRSA claim is entitled to all relief necessary to make the employee whole, "including compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees."  49 U.S.C. § 20109(e).

To determine the amount of reasonable attorney fees, the Court must calculate the lodestar by multiplying the number of hours reasonably expended on the case by a reasonable hourly rate.  Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).  The lodestar is presumed to result in a reasonable fee award, but the Court may adjust the lodestar up or down to account for additional factors not considered in determining the lodestar.[3]  Id.

---

[2] In Plaintiff's Reply, Plaintiff withdraws the request for $2,176.57 in costs and requests an additional $4,410 in attorney's fees for preparing the reply brief, making the new total requested $517,530.97.  Plaintiff's Reply, docket no. 130, at 18.

[3] The parties dispute the precedential value of the Johnson-Kerr factors, in light of the Supreme Court's decision endorsing the lodestar method in Perdue v. Kenny A., 559 U.S. 542, 551 (2010).  Ninth Circuit case law since Perdue clarifies that the Johnson-Kerr factors may be considered in determining whether or not to adjust the lodestar figure.  See Hohlbein v. Utah Land Res. LLC, 467 Fed. Appx. 715, 716 (9th Cir. 2012) (quoting Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)) ("In deciding whether to enhance or reduce the lodestar figure, the court considers '(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional

**B. Reasonable Rate**

Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits. Id. at 979. The Court may consider rates outside the forum if local counsel was unavailable or unable to perform. Id. In this case, Plaintiff has not shown that local counsel would be unavailable or unable to handle this matter, and the Court finds the relevant community to be this district. "[T]he burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id. at 980 (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

**1. Attorney Jungbauer**

Attorney William Jungbauer is President and Senior Partner at Yaeger & Jungbauer Barristers, PLC ("YJB"). Jungbauer Decl., docket no. 116, at ¶ 1. He has specialized in railroad litigation for over 35 years representing railroad employees. Id. at ¶¶ 3, 6. Jungbauer has extensive experience and recognition in the field of railroad litigation. See generally id. Jungbauer requests an hourly rate of $600. In support of this rate request, Plaintiff submits a 2009 survey of standard billing rates indicating that in 2009, an attorney with 31 or more years of experience in a metropolitan area charged an average of $344 per hour, with a "ninth decile" rate of $475. Jungbauer Decl. ¶ 20, Ex. C. Plaintiff also offers the affidavit of John Kujawski, an experienced railroad attorney

---

relationship with the client, and (12) awards in similar cases.'"). In considering whether to adjust the lodestar, as discussed below in Section E, the Court has considered all of the relevant factors.

ORDER - 4

with a national practice headquartered in Illinois, who opines that an hourly rate of $600 is reasonable in FRSA litigation for an attorney of Jungbauer's background. Kujawski Affidavit, docket no. 116-3, at ¶ 6.

Plaintiff does not offer any declarations regarding the prevailing rate in this judicial district. Furthermore, the cases cited by Plaintiff in support of the requested rate are also not from this judicial district. See Brig & Buchala v. Port Auth. Trans Hudson, No. 12-Civ-5371 (S.D.N.Y. March 28, 2014) (reducing rate from $600 to $450 because attorney had only been representing railroad workers for 10 years); Barati v. Metro-North R.R. Co., 939 F. Supp. 2d 153, 156 (D. Conn. 2013) (finding reasonable rate for lead attorney of $525 per hour). Plaintiff offers no evidence that rates in the Southern District of New York or District of Connecticut are comparable to rates in this district.

Defendant asserts that a rate of $600 is unreasonable in this district and that a reasonable rate for Jungbauer is $400 per hour. Defendant's Response, docket no. 124, at 16. Defendant offers two declarations in support of this position. Clemens Barnes, a Seattle area litigator with 43 years of experience who also serves as an arbitrator and mediator in this area, charges new clients $450 per hour and established clients $395 per hour. Barnes Decl., docket no. 127, at ¶ 8. Barnes opines that $400 is a reasonable rate in the Seattle market for the work done by Jungbauer. Id. at ¶ 9. Chuck Chandler, Partner in Charge of the Legal Consulting Practice of Valeo Partners LLC, analyzed hourly rates charged by partners at 26 firms litigating in this judicial district between the years 2009 and 2013. Chandler Decl. at ¶¶ 9-11. Chandler determined that Jungbauer's

ORDER - 5

requested rate was the highest of all 26 firms, and significantly above the average ($388.15) and median ($400) rates. Id. at ¶ 11.

The Court finds that a reasonable rate for attorney Jungbauer is $400.[4]  Jungbauer has extensive experience in representing railroad workers, and a rate of $400 is reasonable for comparable work done by an attorney with similar background and experience.

### 2. Attorney Crosta

Attorney Bradley Crosta served as local counsel in this case. He has been admitted to practice in Washington since 1980 and his practice focuses on personal injury litigation. Crosta Decl., docket no. 117, at ¶ 2. Plaintiff requests an hourly rate for Crosta of $500. Defendants argue that a reasonable rate for Crosta is $330 per hour.

Plaintiff offers no evidence in support of the requested rate for Crosta, other than Crosta's brief declaration regarding his education and experience. Although Crosta served as second-chair at trial, he did not question any witnesses or participate in voir dire and only briefly addressed the Court during trial. Crosta billed Jungbauer's office at a negotiated rate of $325 per hour, which is based upon the relationship between Crosta and Jungbauer and does not usually involve second-chairing a trial as he did in this case. Second Jungbauer Decl., docket no. 131, at ¶ 3. Crosta does not provide the Court with any statement in his declaration regarding what he typically charges for similar work or

---

[4] The Court notes that Plaintiff's fee agreement with YJB indicates that time for attorney Jungbauer will be billed at the hourly rate of $400. Docket no. 131-1 at 2. Although not dispositive, the fee agreement is evidence supporting the Court's ultimate finding of a reasonable rate of $400.

what he believes a reasonable rate to be for the work he did in this case. While an attorney of Crosta's experience could potentially command a higher rate in other circumstances, such as serving as lead attorney or playing a more active role at trial, the Court finds that in light of his very limited role at trial, a reasonable rate for Crosta is $325 per hour.

### 3. Attorneys Brunner, Bowman, and Brandis

Attorney Justin Brunner was admitted to practice in Minnesota in 2008, worked for a year and a half as a judicial law clerk, and then worked for three years as an associate attorney at YJB, practicing primarily in the area of FRSA. Attorney Christopher Bowman was admitted to practice in Minnesota in 2009, worked almost four years as a judicial law clerk, and joined YJB as an associate attorney in 2013. Attorney David Brandis was admitted to practice in Minnesota in 2011, worked in the field of complex litigation, and joined YJB in October 2013. Plaintiff requests rates of $300 for attorneys Brunner and Bowman and $275 for Brandis. Defendant argues that a reasonable rate for the three associates is $250.

The rate survey cited by Plaintiff indicates that in 2009, average rates for attorneys with Brunner's and Bowman's experience in a metropolitan area was $209, upper quartile rate was $240, and ninth decile rate was $275. Jungbauer Decl. Ex. C. For an attorney with Brandis's experience, the rates were $195, $225, and $250, respectively. Plaintiff offers no evidence of comparable rates for associates in this district. Clemens Barnes states that the standard rate for associates in his practice group with five years of

ORDER - 7

1  experience (such as Brunner and Bowman) is $240 and the standard rate for litigation
2  associates with seven years of experience is $290.  Barnes Decl. at ¶ 10.
3   Attorney Brunner has several years of experience, focusing primarily on FRSA
4  cases, and the Court finds that a reasonable rate for Brunner is $275.  Attorneys Bowman
5  and Brandis first joined YJB in 2013 and therefore do not have the same level of FRSA
6  experience as attorney Brunner.  The Court finds that a reasonable rate for Bowman and
7  Brandis is $250.

### 4. Paralegal Grinde

9  Defendants do not oppose the requested hourly rate of $100 for paralegal Grinde,
10  and the Court finds the rate to be reasonable.

## C. Reasonable Hours

12  The Court should exclude from any fee calculation hours that were not reasonably
13  expended on the litigation.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  The party
14  seeking fees "should make a good-faith effort to exclude from a fee request hours that are
15  excessive, redundant, or otherwise unnecessary."  Id.

### 1. Duplicate Entries

17  Defendant seeks to exclude duplicate hours, primarily where Jungbauer and
18  Grinde billed identical amounts of time for identical entries.  See Sub-schedule Showing
19  Duplicate Time Entries, Graff Decl., docket no. 125, Ex. 3.  Plaintiff explains the
20  duplication as being caused by Grinde creating the entries for both timekeepers.  The
21  Court finds the duplicate time entries where both Grinde and Jungbauer attended trial to
22  be reasonable.  However, the Court finds the remaining duplicative time entries for

Grinde to be redundant. The time entries indicate that both Grinde and Jungbauer often reviewed the same emails, attended the same teleconferences, attended the same depositions, and drafted the same documents. The Court does not find it reasonable and necessary for both an attorney and paralegal to bill for each of these activities, and does not award fees for those hours, reducing Grinde's time spent by 158 hours 25 minutes. The Court declines to reduce Jungbauer's hours for duplication, as Plaintiff has sufficiently justified the method of timekeeping and the Court finds Jungbauer's hours for these activities to be reasonably necessary.

**2. Attorney Crosta's Time Spent at Trial**

Defendant seeks to exclude all time spent by local counsel Crosta after the Pre-Trial Conference when the Court told Crosta he was not required to attend trial as local counsel. Plaintiff argues that Crosta's time was reasonably necessary because he second-chaired trial, suggested questions to ask witnesses, assisted in preparing opening statement and closing argument, and assisted with voir dire. The Court's comment that Crosta was not required to attend trial as local counsel certainly does not preclude Crosta from attending trial as second-chair and serving an active role in the case. The Court finds the presence of two attorneys to be reasonably necessary, given the nature and complexity of the case, and, as Plaintiff notes, Defendant was represented by two attorneys throughout the trial as well. Although Crosta's role was limited, the Court finds Crosta's time to be reasonably necessary and declines to reduce Crosta's hours.

### 3. Hours Spent on Unsuccessful Claims

Defendant seeks to exclude all hours spent by Plaintiff's attorneys unsuccessfully opposing Defendant's motion for summary judgment and unsuccessfully pursing a claim for punitive damages. Plaintiff claims that Plaintiff had only one claim, violation of FRSA, on which Plaintiff was successful, and therefore no apportionment of fees is appropriate. The Court finds that, to the extent apportionment is possible, Plaintiff is not entitled to recover fees for the hours spent on unsuccessful motions practice but is entitled to recover fees for hours spent on the claim for punitive damages.

With regard to the partial summary judgment motion, of the six unfavorable actions challenged by Defendant, three were dismissed on summary judgment, one was dismissed at trial, and one was never presented to the jury. The other distinct claim challenged in the summary judgment motion, interference with medical treatment, was dismissed. The only challenged action upon which Plaintiff was successful was the claim regarding assigning 40 "risk-identifier"/PPI points. The Court finds the time spent opposing summary judgment must be reduced by fifty percent (50%) to account for Plaintiff's partial success defending against the motion.[5]

With regard to Plaintiff's claim for punitive damages, Defendant identifies over 55 hours spent by Plaintiff's lawyers on the claim. See Graff Decl. Ex. 4. Plaintiff does not

---

[5] The Court finds a reduction of 50% to be appropriate, even though Plaintiff ultimately prevailed on only one-seventh (approximately 14%) of the motion, to reflect the extent of Plaintiff's success. The imposition of 40 PPI points was a major issue in the litigation, and the Court finds Plaintiff is entitled to recover a significant portion of attorney fees due to Plaintiff's partial success in defending the summary judgment motion. The Court makes the following reductions: (1) Attorney Brandis hours reduced by 18 hours, 57 minutes; (2) Attorney Bowman hours reduced by 7 hours, 50 minutes; (3) Attorney Jungbauer hours reduced by 27 minutes.

ORDER - 10

contest that these hours are reasonably apportioned to work on the claim for punitive damages, but argues that the hours expended were reasonable and necessary and should be recovered.  Although Plaintiff was ultimately unsuccessful on the issue of punitive damages, it was not a separate or distinct claim and the Court finds that there was sufficient evidence to go to the jury on the issue.  Therefore the Court will include the hours Plaintiff's attorneys spent on the issue of punitive damages in the fee award.

### 4.  Excessive Time

In addition to the categories above, Defendant also objects to several time entries as reflecting excessive time, including time (1) traveling to and from Seattle; (2) preparing and amending Plaintiff's pre-trial statement before the ALJ and pre-trial statement to this Court; (3) drafting Expert Disclosure; and (4) preparing the fee application.  Plaintiff argues that Defendant does not explain why this time was excessive and that the Court should therefore disregard this argument.

With regard to travel time, Plaintiff has failed to make any argument or present any evidence that local counsel would be unable to handle her case.  However, the Court finds that the area of railroad law is a unique area of the law, and that Plaintiff's counsel Jungbauer has specialized knowledge on the topic and has been recognized as a top attorney in railroad law.  Plaintiff's decision to hire national counsel, specializing in this particular area of the law, was reasonable.  The Court finds that travel time to and from Seattle may be included as a part of the attorney fee award.  However, the Court finds it unreasonable to award all hours of travel time at counsel's full rate of $400 per hour.  While traveling, attorneys can choose to work on other matters, work on the case at hand,

or engage in other personal pursuits.  The Court will therefore award Plaintiff fifty percent (50%) of the time billed while traveling.[6]

With regard to the pre-trial statement, 55.8 hours are attributed to that activity.  However, the Court has already excluded 18 of those hours in excluding Grinde's duplicate entries, as discussed above.  Similarly, with regard to Plaintiff's expert disclosure, the Court has reduced the amount of time in half by excluding Grinde's duplicate entries.  The Court finds no further reduction necessary regarding these matters.

With regard to the fee application, 63.17 hours were expended.  The Court has already reduced this figure by 19.5 hours, in excluding Grinde's duplicate entries.  The Court finds the entries for Bowman (20 hours 55 minutes) and Jungbauer (19 hours 30 minutes) to be excessive in preparing the request for fees and costs.  The Court finds a reasonable number of hours for Bowman to be 11 hours and for Jungbauer to be 10 hours.

Plaintiff also requests an additional $4,410 for attorney Bowman's time preparing the reply brief.[7]  Plaintiff's Reply, docket no. 130, at 18 n.40.  The Court finds reasonable the number of hours for preparation of the reply brief.

---

[6] Alternatively, the Court considered awarding all hours at a reduced rate of $200 per hour for Jungbauer and $50 for Grinde.  See Barnes Decl. at ¶ 18.  For simplicity in summarizing the fee award, the Court chooses to instead award a reduced number of hours at counsel's full rate.  The Court makes the following reductions accordingly: (1) Attorney Jungbauer hours reduced 8 hours 15 minutes; (2) Paralegal Grinde's hours reduced 5 hours 45 minutes.  See Summary of Travel Time, Graff Decl. Ex. 5.

[7] This represents 14 hours, 42 minutes.  Bowman Decl., docket no. 132, at ¶ 2.

ORDER - 12

### D. Lodestar Amount

Taking into account the reasonable hourly rate and number of reasonable hours, as discussed above, the Court finds the lodestar amount to be $231,306.66.[8] This amount is summarized by timekeeper as follows:

| Name | Adjusted Hourly Rate | Adjusted Time Spent | Adjusted Total |
|---|---|---|---|
| Jungbauer | $400 | 391:52 | $156,746.67 |
| Crosta | $325 | 101:18 | $32,922.50 |
| Brunner | $275 | 20:58 | $5,765.83 |
| Bowman | $250 | 86:44 / 94:26 | $23,608.33 |
| Brandis | $250 | 22:54 | $5,725.00 |
| Grinde | $100 | 65:23 | $6,538.33 |
| Total | | | $231,306.66 |

### E. Adjustment of Lodestar

Defendant argues that the fee request should be substantially reduced to reflect Plaintiff's limited success at trial and the inadequacy of her attorneys' time records.

---

[8] This amount includes hours spent while the case was pending before OSHA. In the Secretary's preliminary order, Plaintiff was awarded attorney's fees of $22,917.50. Jungbauer Decl. Ex. K at 70. Rather than awarding Plaintiff this amount and then beginning the Court's lodestar analysis for work completed after the case left OSHA, the Court includes all reasonable hours expended at the rate the Court finds reasonable in the fee award. By utilizing this approach, Plaintiff is awarded a slightly higher fee for that time period, a difference of $2,809.18.

ORDER - 13

### 1. Limited Success

Courts consider a downward adjustment of a fee award where the plaintiff has obtained limited success on her pleaded claims. McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009). In McCown, the plaintiff prevailed on only one of nine original claims and the Ninth Circuit held that the district court erred in failing to take into account the plaintiff's limited success in determining a reasonable award. In this case, Plaintiff alleged that Defendant violated the FRSA due to her protected activity of reporting a work-related injury. Plaintiff prevailed on her claim and the jury awarded Plaintiff damages to fairly compensate her injury.

Although her complaint contained many additional unfavorable personnel actions that did not go to the jury, each a potential violation of the FRSA, the substantive basis of Plaintiff's claim centered on the record suspension she received and the imposition of 40 PPI points, the two unfavorable personnel actions that were presented to the jury and upon which Plaintiff prevailed. The Court finds that a reduction of the lodestar amount is not warranted on the basis of Plaintiff's limited success. See Bala v. Port Auth. Trans-Hudson Corp., ARB Case No. 12-048, ALJ Case No. 2010-FRS-026  (A.R.B. Mar. 5, 2014) (awarding complainant $26,118.75 in attorney's fees for proceedings before the ARB when complainant recovered only $1,010 in compensatory damages).[9]

---

[9] Plaintiff also cites the ALJ decision in Bala, awarding complainant $45,958.08 in fees for proceedings before the ALJ. Plaintiff's Reply at 14. The Court was unable to locate a copy of the cited decision and therefore does not rely upon it in formulating the Court's opinion.

ORDER - 14

### 2. Inadequacy of Time Records

The Court may reduce a fee award if the party requesting fees provides insufficient documentation for its request.  See Chemical Bank v. City of Seattle, 19 F.3d 1291, 1305 (9th Cir. 1994).  Although some of Plaintiff's attorneys occasionally used block billing or provided time entries lacking detail, overall the Court finds that Plaintiff has provided sufficient documentation in support of her fee request.  The Court declines to reduce the fee award on the basis of inadequate time records.

### F. Attorney Fee Award Conclusion

The Court concludes that a reasonable attorney fee award is the lodestar amount calculated above, a total of $231,306.66.

## Costs and Expenses Request

The FRSA provides a prevailing plaintiff with the right to recover litigation costs and expert witness fees.  49 U.S.C. § 20109(e).

### A. Litigation Costs and Out of Pocket Expenses

The FRSA does not define "litigation costs," and this phrase has not yet been interpreted by any court.  Defendant argues that Plaintiff is limited to recovery of taxable costs specified in 28 U.S.C. § 1920, citing cases interpreting fee-shifting provisions of ERISA and the ADA.  See Agredano v. Mutual of Omaha Companies, 75 F.3d 541, 544 (9th Cir. 1996) (interpreting "costs of action" under ERISA); Robins v. Scholastic Book Fairs, 928 F. Supp. 1027, 1035 (D. Or. 1996) (interpreting "costs" under the ADA).  The Court need not determine the proper interpretation of the phrase to address Plaintiff's requested costs.  Ninth Circuit precedent makes clear that the Court may include certain

ORDER - 15

litigation expenses as a part of a reasonable attorney's fee.  See, e.g., Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 580 (9th Cir. 2010).  Where a statute authorizes an award of attorney's fees to a prevailing party, the Court may include reimbursement for out-of-pocket expenses such as travel, courier and copying costs.  Id.  These are precisely the types of costs requested by Plaintiff here.

To the extent Plaintiff seeks recovery of taxable costs, Plaintiff has filed a motion for bill of costs, docket no. 120, and therefore Plaintiff's recovery of these costs will be addressed by the Clerk pursuant to Local Civil Rule 54(d).[10]  The Court will address only Plaintiff's request for non-taxable out-of-pocket expenses customarily charged to a fee-paying client.  These expenses include the categories of Miscellaneous Expenses, UPS/FedEx, Meals, and Travel Expenses (including Hotels, Airline Tickets, and Ground Transport).  See Plaintiff's Motion at 13.

Plaintiff provides a 35 page detail transaction file list, Jungbauer Decl. Ex. J, showing all costs incurred, and provides a summary of costs by category, Plaintiff's Motion at 13.  However, the detailed list does not indicate the cost category, and Plaintiff offers no additional summaries, explanations, or justifications for the costs requested.  Plaintiff's method of presenting costs makes it very difficult for the Court to determine which expenses, if any, are reasonable and necessary.[11]

---

[10] These costs include the categories of Photocopying and Court Reporters.  See Plaintiff's Motion at 13.

[11] Even adding up the costs by "Level" as broken out by Plaintiff proved impossible.  For example, Plaintiff requests costs of $3,577.83 for the period when the case was with OSHA.  See Plaintiff's Motion at 13.  Regardless of category, there is no way to add up the expenses chronologically and reach that

ORDER - 16

### 1. Miscellaneous Expenses

Plaintiff requests a total of $9,077.95 in "Miscellaneous Expenses." Plaintiff's Motion at 13. However, Plaintiff does not provide the Court with a summary of which expenses are included in this category. Many of the costs the Court believes might be included in this category are also included in Plaintiff's motion for bill of costs, such as mediation fees, service fees, and Court fees. However, the lack of explanation or documentation provided by Plaintiff makes it impossible for the Court to determine what Plaintiff is seeking as "Miscellaneous Expenses." The Court therefore declines to award any expenses in this category.

### 2. UPS/FedEx

Plaintiff requests $4,378.44 in expenses for UPS and FedEx. Plaintiff's Motion at 13. Defendant does not challenge this amount as unreasonable or excessive, and the Court will award the requested amount.

### 3. Meals and Travel Expenses

Travel expenses are generally recoverable as out-of-pocket expenses, see, e.g., Grove, 606 F.3d at 580. Having determined that Plaintiff's decision to hire national counsel was reasonable, as discussed above, the Court will award reasonable and necessary travel expenses as a part of Plaintiff's attorney fee award. Plaintiff has requested a total of $43,861.67 in meal and travel expenses. See Summary of Travel Expenses, Graff Decl. Ex. 20. However, Plaintiff fails to offer any explanation or

---

subtotaled amount. Plaintiff's documentation is insufficient to allow the Court to make any meaningful review.

ORDER - 17

justification for any of the trips taken by any traveler.  Furthermore, Plaintiff asserts without explanation that "Craig and Larkin are representatives of Wallis's attorneys and investigators for this case."  Plaintiff's Reply at 16.  Without any justification for what role Craig or Larkin may have played, the Court finds it unreasonable to require Defendants to pay their travel expenses.

The Court therefore awards travel expenses only for (1) Jungbauer's trip to Boston, identified by Defendant as a necessary trip to take a deposition, (2) Jungbauer's trip to Seattle for the pretrial conference, and (3) Jungbauer and Grinde's trip to Seattle for trial.  The Court finds Grinde's travel expenses otherwise unnecessary and the remainder of the travel expenses unexplained.  The Court awards travel expenses as follows: $2,400.30 in air travel,[12] $2,769 in meals,[13] $6,292.58 in hotel expenses,[14] and $760.93 in taxi and car rental expenses,[15] for a total of $12,222.81.

---

[12] The Court finds Plaintiff's air travel expenses to be extremely high, and without any supporting documentation is unable to determine the reasonableness of the request.  For instance, Plaintiff requests $890 for roundtrip airfare "to Seattle and New Orleans" for Jungbauer for the pretrial conference, $626 for Jungbauer to Seattle for trial and $700 for Jungbauer home after trial.  See Graff Decl. Ex. 20.  The Court considered awarding no air travel expenses due to Plaintiff's insufficient documentation.  However, the Court believes some air travel expense to be reasonable and therefore includes the following: $703.80 for Jungbauer to Boston, $444.50 for Jungbauer to Seattle for the pretrial conference, $626 for Jungbauer to Seattle for trial, and $626 for Grinde to Seattle for trial.

[13] The Court agrees with Defendant that Plaintiff's requested meal expenses are excessive.  The Court therefore awards Plaintiff $71 per day (the Court's per diem rate for Seattle and Boston for meals and incidental expenses, see http://www.gsa.gov/portal/category/100120) for the following trips: 3 days in Boston (Jungbauer), 2 days in Seattle (Jungbauer - pretrial conference), and 17 days in Seattle (Jungbauer and Grinde - trial).

[14] The Court includes: $473.50 (one-half of the Boston hotel expenses), $301.40 (one-half of the Seattle hotel expense for the pretrial conference), and $5,517.68 (all of the Seattle hotel expense for trial).

[15] The Court includes: $405.80 for Boston trip, $128.13 for pretrial conference, and $227 for trial.

ORDER - 18

### 4. Expenses Conclusion

The Court awards as a part of reasonable attorney's fees the following reasonable and necessary out-of-pocket expenses: $4,378.44 in expenses for UPS and FedEx and $12,222.81 in travel expenses, for a total of $16,601.25.

### B. Expert Witness Fees

The FRSA specifically allows a prevailing employee to recover expert witness fees. Defendant argues that Plaintiff's requested expert fees should be reduced to reflect Plaintiff's partial success and to reflect the fact that the Court excluded large portions of the experts' testimony. As discussed above, the Court finds reducing any award based upon partial success to be inappropriate under the facts of this case. With regard to the testimony of experts Nancy Lessin and George Gavalla, the Court finds that a reduction based on limited testimony is not reasonable. Defendant characterizes Lessin's testimony as being related largely to punitive damages. Lessin's testimony, while relevant to the punitive damages issue, was also closely related to Plaintiff's claim regarding imposition of 40 PPI points. The Court does not find that the expert testimony was unnecessary or had a limited effect on the verdict, as argued by Defendant.

As discussed above regarding expenses, Plaintiff does not make any attempt to explain or justify the expert witness fees in her motion and only addresses the specific items challenged by Defendant in her reply. Plaintiff does not provide any invoices of these experts or otherwise support the amount of expert witness fees requested. For example, Plaintiff requests a total of $8,088.54 for William D. Stratford Jr., M.D.,

including $2,000 to testify at trial on February 25, 2014, and an additional $2,200 for services rendered between February 24, 2014, and February 26, 2014.  The Court finds Plaintiff's documentation insufficient to fully assess the reasonableness of the cost request and the Court therefore reduces the amount of fees awarded by twenty-five percent (25%).  The Court finds that Plaintiff is entitled to recover expert witness fees of $30,459.82.[16]

**Conclusion**

Plaintiff's motion for attorney fees and costs, docket no. 115, is GRANTED. Plaintiff is AWARDED attorney fees in the amount of $231,306.66, expenses of $16,601.25, and expert witness fees in the amount of $30,459.82.  The Clerk is DIRECTED to enter a supplemental judgment consistent with this Order.

IT IS SO ORDERED.

Dated this 23rd day of April, 2014.

_____
THOMAS S. ZILLY
United States District Judge

---

[16] The fees include: George A. Gavalla - $15,406.31 (Jungbauer Decl. Ex. J, page 28 and 58); Nancy Lessin - $17,118.24 (page 58); William D. Stratford Jr., M.D. $8,088.54 (pages 26, 27, 32, 42, 49, and 51).  The total of allowable expert witness fees, $40,613.09, reduced by 25%, results in a cost award of $30,459.82.  The Court does not include fees for Computer Forensic Services - $1,593.75 (page 45). Defendant objects on the grounds that this expense was incurred on a discovery request abandoned by Plaintiff after Defendant objected.  Plaintiff has not established the reasonableness of this expense, nor provided any justification for the expense, and is not entitled to recover such fees.  The request for Orthopaedic Specialists of New Orleans - $250 (page 54) was withdrawn by Plaintiff.

ORDER - 20